IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| NETONE, INC.,<br><br>       Plaintiff,<br><br>  vs.<br><br>PANACHE DESTINATION<br>MANAGEMENT, INC.,<br><br>      Defendant. | Case No. 20-cv-00150-DKW-WRP<br><br>**ORDER DENYING MOTION FOR<br>SUMMARY JUDGMENT** |

## <u>INTRODUCTION</u>

As Plaintiff indicates, this case, or at least the instant motion for summary judgment, involves a "straightforward contractual analysis." That analysis asks whether Plaintiff is entitled to a full refund of the deposits it provided to Defendant, pursuant to contracts the two parties entered into regarding an event Plaintiff wished to hold on the Big Island of Hawai‘i. Unfortunately for Plaintiff, the "straightforward" answer is that, based upon the scant legal support Plaintiff provides for the relief it seeks, Plaintiff is not entitled to a full refund of its deposits. As a result, as more fully discussed below, the motion for summary judgment is DENIED.

## PROCEDURAL BACKGROUND

Plaintiff NetOne, Inc. (Plaintiff or NetOne) initiated this action with the filing of a Complaint on April 7, 2020 against Panache Destination Management, Inc. (Defendant or Panache).   Dkt. No. 1.   Plaintiff asserts two claims for relief: Breach of Contract (Claim One) and Unjust Enrichment (Claim Two).

A little over two weeks after filing the Complaint, Plaintiff filed the instant motion for summary judgment ("the motion") with respect to Claim One.   Dkt. No. 10.   Plaintiff also filed a concise statement of facts and accompanying exhibits.   Dkt. No. 11.   On May 13, 2020, Defendant filed an opposition to the motion, along with a concise statement of facts and exhibits.   Dkt. Nos. 18-19. On May 27, 2020, Plaintiff filed a reply and a response statement of facts, as well as amendments to certain documents it filed in connection with the motion.   Dkt. Nos. 21-24.   This Order now follows.

## FACTUAL BACKGROUND

NetOne is owned by residential and commercial security companies across the United States and provides those member companies with various services, including incentive travel award programs.   Decl. of David Carter at ¶ 5, Dkt. No. 11-1.   One of the incentive travel award programs held by NetOne is called the Grand Champions Event (Event).   *Id*. at ¶ 9.

2

In connection with the Event, NetOne and Panache entered into a Services Contract on December 31, 2019.   Services Contract at 21, Dkt. No. 11-3.[1] Pursuant to the Services Contract, Panache agreed to provide, *inter alia*, transportation, guided tours, and recreational activities for the Event.   *See generally id*.   Meanwhile, NetOne agreed to provide deposits to Panache (1) for 90 percent of the estimated value of the Services Contract, and (2) to confirm a service or product, the latter of which were described as "Specialty Deposits" and non-refundable.   *Id*. at 19.   The total estimated value of the Services Contract was $143,532.35.   *Id*. at 18.   On January 6, 2020, Panache received a deposit of $129,179.12 from NetOne with respect to the Services Contract.   Defendant's Counter Statement of Facts (DCSF) at ¶ 6, Dkt. No. 19; Plaintiff's Response Statement of Facts (PRSF) at ¶ 6, Dkt. No. 22; Decl. of Paul Dong at ¶ 5, Dkt. No. 19-3.

---

[1]Both parties assert that the Services Contract was entered into on December 30, 2019.   Dkt. No. 11 at ¶ 10; Dkt. No. 19 at ¶ 10 (p.1).   However, the signature page of the Services Contract reflects that it was not executed by both parties until December 31, 2019.   *See* Services Contract at 21.

The Event was scheduled to begin on March 22, 2020 and end on March 26, 2020.   *See id*. at 1-5, 17.[2]   Approximately 500 participants were expected to attend the Event.   Carter Decl. at ¶ 20.

In December 2019, an outbreak of severe acute respiratory syndrome was identified and subsequently named "Coronavirus" and/or "COVID-19." Plaintiff's Concise Statement of Facts (PCSF) at ¶ 13, Dkt. No. 11; Defendant's Response Statement of Facts (DRSF) at ¶ 13, Dkt. No. 19.   On January 31, 2020, the President of the United States declared a public health emergency.   3/4/20 Proc. of Gov. David Y. Ige at 2, Dkt. No. 11-6.   On March 4, 2020, Governor David Y. Ige declared a state of emergency in the State of Hawai'i.   *Id*. at 4.

On March 10, 2020, NetOne and Panache entered into a Décor Contract. Décor Contract at 22, Dkt. No. 11-4.[3]   Pursuant to the Décor Contract, Panache

---

[2]The parties dispute when the Event was scheduled to end.   Plaintiff asserts the scheduled end date was March 27, 2020, while Defendant asserts the end-date was March 26, 2020.   Dkt. No. 11 at ¶ 11; Dkt. No. 19 at ¶ 11 (p.2); Dkt. No. 22 at ¶ 1.   The most accurate description of the record before the Court reflects an end date of March 26, 2020.   The only indication that the end date was March 27, 2020 is the cover page of another contract between the parties.   *See* Décor Contract at 1, Dkt. No. 11-4.   However, there is no evidence in the record of *anything* that was to take place on that date, at least not organized by Panache.   Rather, the Services Contract reflects that the "Main Departure Day" was March 26, 2020, Services Contract at 17, and nothing in either the Décor Contract or the Services Contract suggests that any event or service was scheduled for March 27, 2020.   *See* Décor Contract at 18 (summarizing events for March 22, March 23, and March 24, 2020); Services Contract at 3 (summarizing events from March 22 through March 26, 2020).
[3]Plaintiff describes the Décor Contract as an "amend[ment]" to the Services Contract, PCSF at ¶ 10, and Defendant disputes this characterization, DRSF at ¶ 10.   Based upon the summary judgment record, the Court agrees with Defendant that the Décor Contract was not an

agreed to provide various entertainment, lighting, and décor for certain events scheduled to take place during the Event, including a luau. *See generally id*. Meanwhile, NetOne agreed to provide a deposit equal to 90 percent of the estimated value of the "Services Contract."[4]  *Id*. at 19.   The total estimated value of the Décor Contract was $151,653.22.  *Id*. at 18.   On January 27, 2020, NetOne paid a deposit of $30,540.32 to Panache for the luau.   DCSF at ¶ 12; PRSF at ¶ 12. On March 13, 2020, NetOne paid an additional deposit of $121,112.90 to Panache. DCSF at ¶ 13; PRSF at ¶ 13; Dong Decl. at ¶ 6.

On March 11, 2020, the World Health Organization designated the Coronavirus as a pandemic of international concern.   3/16/20 Supp. Proc. of Governor David Y. Ige at 1, Dkt. No. 11-7.   On March 13, 2020, the President of the United States declared a national emergency in response to the Coronavirus. On March 15, 2020, the Centers for Disease Control and Prevention (CDC)

---

amendment to the Services Contract.   Instead, they are two separate agreements.   Notably, *nowhere* in the Décor Contract does it state that the same is amending the Services Contract.   In addition, the "Terms and Conditions" in the two contracts are largely identical.   It is, thus, hard to say that one is amending the other when they use largely the same terms and conditions. Instead, it appears that the parties used the same terms and conditions to cover two separate contractual undertakings.

[4]As noted above, the two contracts use almost identical language in the "Terms and Conditions" sections.   The use of "Services Contract" in estimating the value of the deposit to be provided under the Décor Contract, however, may be one unintended duplication of language, given that the Décor Contract calculates the value of the deposit due thereunder and bases the same on the estimated value of the Décor Contract rather than the Services Contract.   *See* Décor Contract at 18.

recommended that, for a period of 8 weeks, all events of 50 or more people be cancelled or postponed throughout the United States.   *Id*.   On March 16, 2020, Governor Ige declared that an emergency continued in the State of Hawaiʻi and, *inter alia*, instructed all residents to heed the orders and guidance of federal and state public health officials, including social distancing measures.   *Id*. at 1-2. Among other things, the CDC advised that all travelers should avoid nonessential travel.   PCSF at ¶ 22; DRSF at ¶ 22.

NetOne closely followed the developments associated with the Coronavirus pandemic and was aware of guidance from the CDC and the State of Hawaiʻi Department of Health.   Carter Decl. at ¶¶ 15-16.   NetOne became concerned that participants of the Event could be subjected to the Coronavirus and be stranded while travelling, as the Event required all or substantially all of the participants to travel from the mainland to Hawaiʻi.   *Id*. at ¶¶ 17-18.

On March 13, 2020, Anne Tart, NetOne's Director of Communications and Events, emailed Harmony Cordeiro, a Managing Director at Panache, stating that NetOne was "canceling our event[,]" and asking for the release of all reserved activities, transportation, and other services.   3/13/20 Email from Anne Tart to Harmony Cordeiro, Dkt. No. 19-9.

On March 19, 2020, David Carter, NetOne's President, sent an email to Cordeiro, stating that NetOne was "terminati[ng]" the Services Contract pursuant to a "Force Majeur" [*sic*] provision therein.   Email from David Carter to Harmony Cordeiro, Dkt. No. 11-5.[5]

Both the Services Contract and the Décor Contract contain an identical "Force Majeur" [*sic*] provision, which reads as follows:

> The pricing contained within this document and the performance of this agreement by either party is subject to acts of God, war, governmental regulation, disaster, or other casualty, strikes or threat of strikes (exception: neither party may terminate this agreement for strikes or labor disputes involving their own employees or agents)[,] acts and/or threats of terrorism, or curtailment of transportation services or similar cause beyond the control of either party making it illegal, impossible, or commercially impracticable to hold the meeting/convention/function or provide the facility. Either party may terminate or suspend its obligations under this agreement by written notice to the other party if such obligations are delayed or prevented by any of the above events to the extent such events are beyond the reasonable control of the party whose reasonable performance is prevented or frustrated.

Services Contract at 20; Décor Contract at 21.[6]

---

[5] The Court notes that, while the email provided as an exhibit is undated, *see* Dkt. No. 11-5, the parties do not appear to dispute that the email from David Carter to Harmony Cordeiro was sent on March 19, 2020, *see* PCSF at ¶ 34; DRSF at ¶ 34.

[6] The Court notes that Plaintiff appears to take issue with Defendant's statement that the Services Contract and Décor Contract contain a force majeure provision and the terms of the same.   *See* PRSF at ¶¶ 14-16.   Contrary to Plaintiff's apparent belief, however, the *words* contained in the contracts are a question of fact; it is the meaning of those words that is a legal question.

In preparation for the Event, Panache hired people, planned recreational activities, and made arrangements related thereto, including paying $9,646.64 on March 13, 2020 for a recreational activity.   Decl. of Harmony Cordeiro at ¶¶ 9-10, Dkt. No. 19-2; 3/18/20 Print-out of 3/13/20 Receipt for Hidden Craters Hike – Group, Dkt. No. 19-13.[7]   In addition, Panache's employees spent substantial time planning the services for the Event.   Cordeiro Decl. at ¶ 13.[8]

As of April 24, 2020, Panache has failed to return NetOne's deposits. Carter Decl. at ¶ 25.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   When the

---

[7]Among other things, the Court notes the following with respect to the expenses Defendant has allegedly incurred with respect to the Event.   First, Plaintiff appears to assert that payments Defendant made are "irrelevant" because they relate to "obligations outside the scope of the Agreement with NetOne…."   PRSF at ¶ 21.   Plaintiff provides *no* evidence to support this assertion, however.   *See id.*   Moreover, the Hidden Craters Hike, at the very least, appears to be specifically included in the Services Contract as an intended activity.   *See* Services Contract at 12.   Second, Defendant states that it also paid an initial deposit for the planned luau.   Cordeiro Decl. at ¶ 11.   However, the exhibit to which Defendant cites, Dkt. No. 19-14, does not state or show that an initial deposit was made.   Instead, the exhibit states that a deposit is "required" and "due[.]"   *Id.* at 1-2.

[8]Plaintiff challenges this statement on the ground that it is irrelevant.   PRSF at ¶ 22.   Again, however, Plaintiff provides no explanation for why time Defendant's employees spent planning the Event is irrelevant, *see id.*, especially given that Plaintiff seeks a *full* return of the deposits it provided to Defendant.

8

moving party bears the burden of proof, he "must come forward with evidence which would entitle [him] to a directed verdict if the evidence went uncontroverted…." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992). Here, this means that Plaintiff "must establish beyond controversy every essential element" of its claims. *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted). In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## DISCUSSION

As mentioned above, in the instant motion, Plaintiff seeks summary judgment with respect to Claim One, which is a claim for breach of contract. It is, thus, notable that at no point in the motion or its reply does Plaintiff ever set forth the elements of a breach of contract claim.[9] If Plaintiff had done so, as discussed below, perhaps the instant motion would have been unnecessary.

---

[9]In addition, while both parties appear to presume that Hawaiʻi law applies here, neither explains why. *See* Dkt. No. 10-1 at 8-9; Dkt. No. 18 at 17-18. This is notable because, based upon the Court's review of the Services Contract and the Décor Contract, there is no governing law provision set forth therein. As such, a "choice of law" analysis is appropriate. *See, e.g.*, *Birnstill v. Home Sav. Of Am.*, 907 F.2d 795, 797 (8th Cir. 1990); *Johnson-Loudermilk v. Playcore Wis., Inc.*, 2009 WL 10696478, at *3 (D. Nev. Sep. 1, 2009). Where, as here, the Complaint alleges that this Court's jurisdiction is premised upon diversity, *see* Compl. at ¶ 2 (Dkt. No. 1), the choice-of-law rules of the forum state – Hawaii – apply, *see Ledesma v. Jack Stewart Produce, Inc.*, 816 F.2d 482, 484 (9th Cir. 1987). In Hawaiʻi, courts apply a "flexible approach looking to the state with the most significant relationship to the parties and subject

In Hawaiʻi, one of the elements of a breach of contract claim is, understandably, a breach of the contract at issue.   *Honold v. Deutsche Bank. Nat'l Trust Co.*, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010) (setting forth elements of a breach-of-contract claim in Hawaiʻi).[10]   Here, two contracts are at issue, the Services Contract and the Décor Contract.   In its memorandum supporting the motion, however, Plaintiff simply assumes that a breach of those contracts has occurred.   At no point therein does Plaintiff attempt to explain *how* the contracts were breached.   Instead, Plaintiff concentrates solely on why it believes it was right to employ the force majeure provision of the contracts.   Even if the Court assumed that Plaintiff properly utilized the force majeure provisions, however, that says little, if anything, about whether *Defendant* breached the parties' contracts.   At least, in the context of the force majeure provisions at issue here.

---

matter."   *Del Monte Fresh Produce (Haw.), Inc. v. Fireman's Fund Ins. Co.*, 183 P.3d 734, 741 (Haw. 2007) (quotation omitted).   Here, Hawaiʻi undoubtedly has the closest connection to the subject matter of the case, given that the Event was to take place in Hawaiʻi and Defendant allegedly does business in Hawaiʻi.   *See* Compl. at ¶ 5.   As a result, the Court finds that Hawaiʻi law applies to the substantive claims in this case.

[10]Specifically, to allege a plausible claim for breach of contract, a plaintiff must at least allege: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the Defendant[]; and (5) when and how Defendant[] allegedly breached the contract."   *Honold*, 2010 WL 5174383, at *3.

Notably, although Plaintiff is tasked with explaining how Defendant breached the Services Contract and the Décor Contract, it appears that Plaintiff believes that Defendant's failure to return the deposits in full constitutes a breach of the force majeure provisions and, thus, the contracts.   *See* Dkt. No. 21 at 7. However, nowhere in the force majeure provisions does it say that, if the contracts are terminated due to a qualifying event, the non-terminating party must return all deposits made.   The provisions are simply silent in that regard.   *Cf. Sociedad Aeronautica de Santander S.A. v. Weber*, 2010 WL 2803044, at *3 (D. Mont. May 20, 2010) (providing, in pertinent part, that, if the contract was terminated in accordance with its force majeure clause, "the deposit shall be repaid to the Buyer"); *In re Flying Cow Ranch HC, LLC*, 2018 WL 7500475, at *3 (Bankr. S.D. Fla. June 22, 2018) (involving a force majeure provision similar to *Weber*, but finding that a qualifying event had not taken place).[11]

---

[11]Contrary to Plaintiff's assertion in its opening memorandum, the force majeure provisions at issue here do not permit termination of the contracts "without liability[,]" Dkt. No. 10-1 at 4, at least not if Plaintiff believes that "without liability" means "full return of the deposits."   This assertion is, again, both divorced from any explanation and the language of the force majeure provisions.   Moreover, if Plaintiff's stance on "without liability" was to hold true, *only* Plaintiff would be held without liability.   Put another way, in light of at least some of the evidence in this case showing that Defendant has incurred expenses in connection with the Event, if *Plaintiff* was to be held without liability by returning to it all of the deposits, *Defendant* would then have liability for the expenses it has already incurred.

Resolution of the motion for summary judgment is that straightforward. Without a breach of the Services Contract and the Décor Contract, Plaintiff cannot, logically, be entitled to summary judgment with respect to its claim for breach of those contracts.   And even if a breach by Defendant had been shown, Plaintiff would still not be entitled to the return of all of its prayed-for deposits under Claim One, as sought by the motion.   *See, e.g.*, *supra* at 10 & fn. 11.   The motion for summary judgment is DENIED.[12]

## CONCLUSION

For the reasons set forth herein, the motion for summary judgment, Dkt. No. 10, is DENIED.

IT IS SO ORDERED.

DATED: June 5, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

[12]Because the Court denies the motion for summary judgment on the foregoing grounds, it is unnecessary for the Court to address the other substantive reasons, at least some of which involve disputed issues of fact, raised in Defendant's opposition.   In addition, the Court notes that, in its opposition, Defendant raises certain alleged procedural missteps Plaintiff took in filing the motion.   *See* Dkt. No. 18 at 9-11.   Although it arguably appears that Plaintiff's counsel misplaced his or her copy of the Local Rules, the Court declines to dispose of the motion for summary judgment on these grounds, not the least because it appears that counsel has attempted to rectify at least some of the missteps originally taken.   *See* Dkt. Nos. 23-24.   Nonetheless, the Court forewarns that compliance with the Local Rules is expected from here on in this (and every) case.