IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NETONE, INC.,<br><br>         Plaintiff,<br><br>   vs.<br><br>PANACHE DESTINATION<br>MANAGEMENT, INC.,<br><br>         Defendant. | Case No. 20-cv-00150-DKW-WRP<br><br><br>**ORDER GRANTING<br>DEFENDANT'S MOTION FOR<br>JUDGMENT ON THE PLEADINGS** |

## INTRODUCTION

For the second time in less than six months, the parties ask the Court to

decide whether Defendant Panache Management, Inc. breached its contracts with

Plaintiff NetOne, Inc. when it failed to return deposits provided by NetOne for an

event on the Big Island of Hawaiʻi.   While, on this occasion, the moving party–

Panache–is different, the contractual language in dispute remains the same as the

first time the Court addressed this issue.   Based upon that language, the Court

finds that Panache is entitled to judgment on the pleadings with respect to

NetOne's breach of contract claim because Panache has not breached the parties'

contracts.   Therefore, as more fully discussed below, the Court GRANTS the

motion for judgment on the pleadings, Dkt. No. 53.

## STANDARD OF REVIEW

Panache moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.  Rule 12(c) provides that, "[a]fter the pleadings are closed…a party may move for judgment on the pleadings."  The standard governing a Rule 12(c) motion is "functionally identical" to that governing a Rule 12(b)(6) motion. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

In that regard, Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff."  *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-887 (9th Cir. 2018) (quotation omitted).

When a plausible claim is not alleged, leave to amend should be given when "justice so requires."  Fed.R.Civ.P. 15(a)(2).  Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there

has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## PROCEDURAL BACKGROUND

NetOne initiated this action against Panache with the filing of a Complaint on April 7, 2020, asserting two claims for relief: Breach of Contract (Claim One) and Unjust Enrichment (Claim Two).   Dkt. No. 1.

Shortly thereafter, NetOne moved for summary judgment on its breach of contract claim.   Dkt. No. 10.   After briefing with respect thereto, the Court denied the motion ("June 2020 Order").   Dkt. No. 25.   More specifically, the Court found that, in this case, two contracts were at issue–a Services Contract and a Décor Contract–and NetOne had failed to explain how either contract had been breached by Panache.

Subsequently, on September 9, 2020, Panache moved for judgment on the pleadings with respect to Claim One.   Dkt. No. 55.   NetOne has filed an

opposition to the motion for judgment on the pleadings, Dkt. No. 55, and Panache

filed a reply in support of the same, Dkt. No. 65.   This Order now follows.

## FACTUAL BACKGROUND

The pertinent factual allegations of the Complaint and the contracts

incorporated by reference therein reflect the following factual background.

NetOne is owned by residential and commercial security companies across

the United States and provides those member companies with various services,

including incentive travel award programs.   Compl. at ¶ 8, Dkt. No. 1.   One of the

incentive travel award programs held by NetOne is called the Grand Champions

Event (Event).   *Id*. at ¶ 12.   The total cost of the Event is approximately $1.25

million, which represents NetOne's largest annual expenditure.   *Id*. at ¶ 14.

In connection with the Event, NetOne and Panache entered into a Services

Contract on December 31, 2019.   Services Contract at 21, Dkt. No. 53-2.[1]

Pursuant to the Services Contract, Panache agreed to provide, *inter alia*,

transportation, guided tours, and recreational activities for the Event.   *See*

*generally id*.   Meanwhile, NetOne agreed to provide deposits to Panache (1) for

90 percent of the estimated value of the Services Contract, and (2) to confirm a

---

[1]Although Plaintiff alleges that the Services Contract was entered into on December 30, 2019, Dkt. No. 1 at ¶ 15, the signature page of the contract reflects that it was not executed by both parties until December 31, 2019.   *See* Services Contract at 21.

service or product, the latter of which were described as "Specialty Deposits" and non-refundable.   *Id*. at 19.   The total estimated value of the Services Contract was $143,532.35.   *Id*. at 18.

In December 2019, an outbreak of severe acute respiratory syndrome was identified and subsequently named "Coronavirus" and/or "COVID-19."   Compl. at ¶ 19.   On January 31, 2020, the President of the United States declared a public health emergency.   *Id*. at ¶ 21.   On March 4, 2020, Governor David Y. Ige declared a state of emergency in the State of Hawaiʻi.   *Id*. at ¶ 22.

On March 10, 2020, NetOne and Panache entered into a Décor Contract. Décor Contract at 22, Dkt. No. 53-3.[2]   Pursuant to the Décor Contract, Panache agreed to provide various entertainment, lighting, and décor for certain events scheduled to take place during the Event, including a luau.   *See generally id*. Meanwhile, NetOne agreed to provide a deposit equal to 90 percent of the

---

[2]The Complaint describes the Décor Contract as an "amend[ment]" to the Services Contract, Compl. at ¶ 15.   Whether one agreement amends another, though, is a legal conclusion, rather than a factual allegation.   In that light, review of the Décor Contract does not lead the Court to the conclusion that it is an amendment to the Services Contract.   Instead, they are two separate agreements.   Notably, *nowhere* in the Décor Contract does it state that the same is amending the Services Contract.   In addition, the "Terms and Conditions" in the two contracts are largely identical.   It is, thus, hard to say that one is amending the other when they use largely the same terms and conditions.   Instead, it appears that the parties used the same terms and conditions to cover two separate contractual undertakings.

estimated value of the "Services Contract."[3]   *Id*. at 19.   The total estimated value of the Décor Contract was $151,653.22.   *Id*. at 18.

On March 11, 2020, the World Health Organization designated the Coronavirus a global pandemic.   Compl. at ¶ 26.   On March 13, 2020, the President of the United States declared a national emergency in response to the Coronavirus.   *Id*. at ¶ 27.   Also, the Centers for Disease Control and Prevention (CDC) advised that non-essential travel should be avoided and events of 50 or more people should be cancelled.   *Id*. at ¶ 32.   On March 21, 2020, Governor Ige mandated that all visitors and residents returning to the State of Hawai'i complete a 14-day quarantine, beginning March 26, 2020.   *Id*. at ¶ 34.   Governor Ige also ordered all residents of Hawai'i to stay home, starting on March 25, 2020.   *Id*. at ¶35.

The Event was meant to begin on March 22, 2020.   *Id*. at ¶ 16.   The Event required all or substantially all of the participants to travel to Hawai'i and approximately 500 participants were expected to attend.   *Id*. at ¶¶ 37, 39.   On

---

[3]As noted above, the two contracts use almost identical language in the "Terms and Conditions" sections.   The use of "Services Contract" in estimating the value of the deposit to be provided under the Décor Contract, however, may be one unintended duplication of language, given that the Décor Contract calculates the value of the deposit due thereunder and bases the same on the estimated value of the Décor Contract rather than the Services Contract.   *See* Décor Contract at 18.

March 19, 2020, NetOne provided written notice to Panache that the Event was
cancelled pursuant to an "Impossibility provision…." *Id*. at ¶ 41.

Both the Services Contract and the Décor Contract contain an identical
"Force Majeur" [*sic*] provision, which reads as follows:

> The pricing contained within this document and the performance of
> this agreement by either party is subject to acts of God, war,
> governmental regulation, disaster, or other casualty, strikes or threat
> of strikes (exception: neither party may terminate this agreement for
> strikes or labor disputes involving their own employees or agents)[,]
> acts and/or threats of terrorism, or curtailment of transportation
> services or similar cause beyond the control of either party making it
> illegal, impossible, or commercially impracticable to hold the
> meeting/convention/function or provide the facility. Either party may
> terminate or suspend its obligations under this agreement by written
> notice to the other party if such obligations are delayed or prevented
> by any of the above events to the extent such events are beyond the
> reasonable control of the party whose reasonable performance is
> prevented or frustrated.

Services Contract at 20; Décor Contract at 21.

Both contracts also contain an identical "Refunds" provision as follows:
"Company [Panache] will refund to Customer [NetOne] all monies due 30-days
following receipt from Customer a [*sic*] signed Final Invoice verifying amount due
or written cancellation." Services Contract at 20; Décor Contract at 20.

NetOne has paid Panache a total of $284,832.34 in deposits. Compl. at ¶
17. As of April 7, 2020, Panache had failed to return NetOne's deposits. *Id*. at ¶
42.

## DISCUSSION

In its motion for judgment on the pleadings, Panache argues that it is entitled

to judgment with respect to Claim One because NetOne cannot establish that the

contracts at issue in this case have been breached.   Dkt. No. 53 at 6-10.   In its

opposition, NetOne argues that Panache has breached the Services and Décor

Contracts by failing to refund its deposits pursuant to the "Refunds" clause.[4]   Dkt.

No. 55 at PageID#624-628.[5][6]   The Court agrees with Panache.

As set forth above, the "Refunds" clause provides, in both contracts, that

Panache will refund to NetOne "all monies due 30-days following receipt" of a

signed final invoice or written cancellation.   Services Contract at 20; Décor

Contract at 20.   The fundamental problem with this language for NetOne, at least

from a contract-breach perspective, is that no facts are alleged in the Complaint, or

---

[4]In its April 24, 2020 summary judgment motion (Dkt. No. 10), NetOne argued that Panache's failure to return NetOne's deposits breached the force majeure clause.   The Court rejected that theory by order dated June 5, 2020, Dkt. No. 25 at 11-12, apparently prompting the change in approach set forth in the opposition.

[5]Solely with respect to NetOne's opposition, the Court cites the PageID numbers created by CM/ECF at the top of each page because the opposition is not sequentially numbered at the bottom of each page.   *See generally* Dkt. No. 55 (containing, among other duplicate numbers, three number 2's).

[6]To allege a plausible claim for breach of contract in Hawaiʻi, a plaintiff must at least allege: "(1) the contract at issue; (2) the parties to the contract; (3) whether Plaintiff performed under the contract; (4) the particular provision of the contract allegedly violated by the Defendant[]; and (5) when and how Defendant[] allegedly breached the contract."   *Honold v. Deutsche Bank. Nat'l Trust Co.*, 2010 WL 5174383, at *3 (D. Haw. Dec. 15, 2010).

stated in NetOne's opposition, demonstrating that any money is due to NetOne under the parties' contracts.   The Refunds clause is a timing provision.   It governs *when* Panache must return any monies due, not *if* it must.   While the Court does not dispute that, under proper circumstances, the parties' contracts can be terminated due to a force majeure event, as explained in the June 2020 Order, *nothing in the contracts*, including the "Refunds" clause, requires the non-terminating party to return all deposits made.   *See* Dkt. No. 25 at 11.   "The provisions are simply silent in that regard."   *Id*.

NetOne's contrary assertions are misplaced.   Specifically, NetOne contends that the "prescribed, normal, or logical payment that was due to NetOne was all unearned money…."   Dkt. No. 55 at PageID#627 (quotation omitted).   NetOne, however, provides no explanation as to why the return of "unearned money" is relevant to the instant breach of contract claim.[7]   Further, as discussed, nothing in the contracts states that the "prescribed, normal, or logical" payment due after a force majeure termination is the return of all deposits NetOne has made, irrespective of the work (or money) that may have been put into the Event by Panache.   Instead, NetOne is asking this Court to effectively re-write the parties

---

[7]Rather, at most, it would appear that "unearned money" may be relevant to Claim Two (unjust enrichment), a count on which the Court currently expresses no view.

contracts to include language that could have been (but was not) used.   *Cf.*

*Sociedad Aeronautica de Santander S.A. v. Weber*, 2010 WL 2803044, at *3 (D.

Mont. May 20, 2010) (providing, in pertinent part, that, if the contract was

terminated in accordance with its force majeure clause, "the deposit shall be repaid

to the Buyer"); *In re Flying Cow Ranch HC, LLC*, 2018 WL 7500475, at *3

(Bankr. S.D. Fla. June 22, 2018) (involving a force majeure provision similar to

*Weber*, but finding that a qualifying event had not taken place).   This the Court

will not do.

Ultimately, while NetOne may consider it unjust,[8] the Services and Décor

Contracts do not require Panache to return the entirety of the deposits NetOne

provided−deposits that were made so Panache could organize the Event that

NetOne wished to hold.   Sometimes, events, such as a pandemic, create situations

that cause disparate impacts.   That may be why the law recognizes a cause of

action sounding in unjust enrichment.   And if NetOne is to recover any portion of

its deposits, that is its remaining theory to which it will need to turn.

---

[8]In fact, NetOne appears to believe that not returning the entirety of its deposit amounts to a "forfeiture."   Dkt. No. 55 at PageID# 631-633.   That is clearly not the case here.

Finally, for the same reasons, there is no ground upon which to grant

NetOne leave to amend Claim One because, considering the contracts at issue here,

any amendment would be futile.

## CONCLUSION

For the reasons set forth herein, the motion for judgment on the pleadings,

Dkt. No. 53, is GRANTED, and Claim One is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

DATED: October 28, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

NETONE, Inc. v. Panache Destination Management, Inc.; Civil No. 20-00150 DKW-WRP;
**ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE
PLEADINGS**